1

```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF GEORGIA
                         WAYCROSS DIVISION


UNITED STATES OF AMERICA              )
                                      )
          v.                          )
                                      )            CASE NO.
MARIA PATRICIO,                       )      5:21-CR-00009-LGW-BWC
                                      )
_____Defendant._____)




                      RULE 11 PROCEEDING
            BEFORE THE HONORABLE LISA GODBEY WOOD
                 July 26, 2024; 9:53 a.m.
                    Brunswick, Georgia
APPEARANCES:

For the Government:        E. GREGORY GILLULY, JR., Esq.
                           U. S. Attorney's Office - Savannah
                           P. O. Box 8970
                           Savannah, Georgia  31412
                           (912) 201-2567
                           greg.gilluly@usdoj.gov


For the Defendant:         JUANITA M. HOLSEY, Esq.
                           The Holsey Law Firm, LLC
                           P. O. Box 132
                           Jesup, Georgia  31598
                           (912) 424-3700
                           jholsey13@gmail.com



Reported by:               Debbie Gilbert, RPR, CCR
                           Official Court Reporter
                           801 Gloucester Street
                           Post Office Box 1894
                           Brunswick, GA 31521-1894
                           (912) 262-2608 or (912) 266-6006
                           debra_gilbert@gas.uscourts.gov
                            - - -
```

2

1          P R O C E E D I N G S

2          (Call to order at 9:53 a.m.)

3     THE COURT:  All right.  Ms. Sharp, call the next case.

4     THE CLERK:  United States of America versus Maria

5  Patricio, Greg Gilluly for the Government, Juanita Holsey for

6  the Defense.

7     MR. GILLULY:  The United States is ready to go forward.

8     MS. HOLSEY:  Defense is ready as well, Your Honor.

9     THE COURT:  And I will note, Ms. Holsey, we're

10  proceeding about ten minutes ahead of time.  Do you need that

11  extra time or are you ready to go forward a little early?

12     MS. HOLSEY:  We're ready to go forward a little early.

13     THE COURT:  Ms. Holsey, approach with your client, Ms.

14  Maria Patricio, and, ma'am, say your last name for me.

15     THE DEFENDANT:  Patricio.

16     THE COURT:  I will do my best to say it that way.

17     THE DEFENDANT:  You said it good.

18     THE COURT:  All right, thank you.

19          Well, Ms. Patricio, we are here because the United

20  States Attorney and your own attorney say that you want to

21  change your plea from not guilty to guilty to one of the counts

22  that's pending against you in this multi-count multi-defendant

23  federal felony criminal indictment; is that right?

24     THE DEFENDANT:  Yes.

25     THE COURT:  The purpose of this proceeding is going to

3

1    be for me to make sure you understand the case as it's presently

2    pending against you.  I want to make sure you understand all the

3    rights that you waive or give up if I decide to accept your

4    plea.

5         I also want to make sure there's, in fact, a factual

6    basis for a plea of guilty to that one count and that this is

7    really what you want to do.

8         There will be other things that we take up as we go

9    along.  I just want you to know right from the outset this is an

10   important day in your life.  It's not something to take lightly;

11   understand?

12        THE DEFENDANT:  Yes, ma'am.

13        THE COURT:  Also know in just a moment, I'm going to

14   have you put under oath, sworn to tell the truth.  If you don't

15   tell the truth while under oath, the Government could prosecute

16   you for perjury; understand?

17        THE DEFENDANT:  I understand.

18        THE COURT:  Ms. Patricio, is anybody making you, pushing

19   you, leaning on you to come in here and change your plea to

20   guilty?

21        THE DEFENDANT:  No.

22        THE COURT:  This is what you want to do?

23        THE DEFENDANT:  Yes, Your Honor.

24        THE COURT:  Swear in Ms. Patricio.

25

4

1              MARIA PATRICIO,

2   having been first duly sworn, was examined and testified as

3   follows:

4        THE CLERK:  Thank you.  If you will please state your

5   full name and spell your last name.

6        THE DEFENDANT:  Maria Patricio, my last name is P as in

7   Paul, A as in apple, T as in Tom, R as in Robert, I as in igloo,

8   C as in cat, I as in igloo, and O.

9        THE COURT:  And Ms. Patricio, what are the last four

10  digits in your social security number?

11       THE DEFENDANT:  5501.

12       THE COURT:  How old are you?

13       THE DEFENDANT:  63.

14       THE COURT:  61?

15       THE DEFENDANT:  63.

16       THE COURT:  63.  Are you married?

17       THE DEFENDANT:  Yes.

18       THE COURT:  Do you have any children?

19       THE DEFENDANT:  Yes.

20       THE COURT:  And how old are they?

21       THE DEFENDANT:  Let me try to remember.  One was born in

22  '78, '79, '83 and '81.

23       THE COURT:  You have four children altogether?

24       THE DEFENDANT:  Three boys and one girl.

25       THE COURT:  I'm sorry?

5

1          THE DEFENDANT:  Three boys and one girl.

2          MS. HOLSEY:  I was telling her she needed to answer out

3     loud.

4          THE COURT:  Where were you born?

5          THE DEFENDANT:  I was born in Brownsville, Texas.

6          THE COURT:  Tell me about where you're living presently.

7     Where is that?

8          THE DEFENDANT:  We live, me and my husband live in

9     Nicholls, Georgia.  It's a small town south of Georgia.  The

10    address is 208 Nopalito Road, Nicholls, Georgia 31554.

11         THE COURT:  Tell me about your educational background.

12         THE DEFENDANT:  I didn't graduate from high school.  I

13    graduated in -- when I was 27 years old, taking classes, and I

14    went to college for two years but I never finished and got a

15    degree.

16         THE COURT:  So which high school did you graduate from?

17         THE DEFENDANT:  Well, I didn't graduate from the high

18    school.  I graduated in Florida, Fort Meade, but it was through

19    online, and it was in -- it's been a long time.  I don't

20    remember exactly, but I'm thinking it might have been in Lake

21    Wales, Florida.

22         THE COURT:  So was it something like a GED?

23         THE DEFENDANT:  Yes, I'm sorry, yes.

24         THE COURT:  And then you mentioned you went on to

25    college.

6

1          THE DEFENDANT:  Yes.

2          THE COURT:  And where, what institution?

3          THE DEFENDANT:  That was the Lakeland PCC college in

4    Lakeland, Florida.

5          THE COURT:  What does that stand for, PCC?

6          THE DEFENDANT:  Polk Community College.

7          THE COURT:  And were you studying anything in

8    particular?

9          THE DEFENDANT:  Office management.

10          THE COURT:  And about what percentage of the way through

11    did you get to your degree?

12          THE DEFENDANT:  I honestly can't remember.  I know I was

13    taking -- I was working at the time at a doctor's office as an

14    office manager, and I worked -- I mean, I studied, took like one

15    or two courses a semester, so I really can't remember, to be

16    honest with you, Judge, Your Honor.

17          THE COURT:  Tell me about your work history.  What jobs

18    have you maintained?

19          THE DEFENDANT:  Do you want me to go all the way back?

20    I worked at a department store.  I worked at a doctor's office

21    as a manager.  I worked in the fields with my parents for years.

22    I worked at a nursery for years.  I worked at the school board.

23    I think that was like for four, three years.  And then I started

24    doing H-2A.

25          THE COURT:  Started doing what?

7

1          THE DEFENDANT:  H-2A contracts.

2          THE COURT:  Oh, I see.  So the school board, what role

3    did you have?

4          THE DEFENDANT:  I can't remember what it's called, but I

5    registered the families that came in to see if they -- to

6    qualify for the program of -- trying to remember what it was.

7    That was in 2002.  I'm sorry, it's just that I signed up the

8    migrant families that came in to work in the fields so they

9    could qualify for a program.

10          THE COURT:  So when you worked in a nursery, children?

11          THE DEFENDANT:  Oh, no, no, nursery, plants.

12          THE COURT:  Yes.  And what did you do there?

13          THE DEFENDANT:  I was the manager -- team manager.

14          THE COURT:  And how long have you worked in the H-2A

15    field?

16          THE DEFENDANT:  2000 and -- let me see.  I don't want to

17    say the wrong thing.

18          THE COURT:  Approximately.

19          THE DEFENDANT:  2010.

20          THE COURT:  And did you have your own company in that

21    respect?

22          THE DEFENDANT:  Yes, ma'am, I did.

23          THE COURT:  Have you ever been diagnosed with any

24    disability of any sort?

25          THE DEFENDANT:  No, Your Honor.

8

1          THE COURT:  Do you take any medications?

2          THE DEFENDANT:  At one point I was taking blood pressure

3    but I stopped taking it.  I'm doing fine.

4          THE COURT:  And in the last 48 hours, have you had any

5    drugs or alcohol?

6          THE DEFENDANT:  No, Your Honor.

7          THE COURT:  Ms. Patricio, as you appear before me right

8    now, you're presumed innocent.  What that means is the

9    Government is your accuser, and as such they have to prove that

10   you're guilty and they have got to do that by bringing forth

11   proof of guilt beyond a reasonable doubt.  You as the defendant

12   don't have to prove anything; understand?

13         THE DEFENDANT:  I understand.

14         THE COURT:  Also know that the indictment that was filed

15   against you and the others, that document that sets forth the

16   charges, that's not evidence.  That's simply what the grand jury

17   and the US Attorney accuse you of having done but it's not

18   evidence; understand?

19         THE DEFENDANT:  I understand.

20         THE COURT:  Now, Ms. Holsey, are you appointed or

21   retained?

22         MS. HOLSEY:  Retained, Your Honor.

23         THE COURT:  Ms. Patricio, that means you've selected Ms.

24   Holsey as the attorney of your choice; is that correct?

25         THE DEFENDANT:  Correct.

9

1          THE COURT:  I do want you to know that if you should

2    ever become unable to pay for an attorney then one would be

3    appointed to represent you at no charge to you throughout the

4    remainder of your case; understand?

5          THE DEFENDANT:  I understand.

6          THE COURT:  Also know you don't have to plead guilty.

7    If you want to persist in a plea of not guilty, you're entitled

8    to do that.

9          If you were to persist in a plea of not guilty, you

10   would be entitled to a public and speedy trial by jury.  During

11   that jury trial, a number of rights would belong to you.  The

12   presumption of innocence that we talked about, that would follow

13   you throughout the trial.

14         Your right to an attorney and one at no charge if you

15   couldn't afford one, that would follow you throughout the trial.

16   You would have the right to see, hear, confront and

17   cross-examine any witness the Government might call.  You would

18   have the right to see all their evidence.

19         For your own part, you would have the right to put up

20   evidence if you wanted.  You would have the right to call

21   witnesses and use subpoenas from The Court to make them appear.

22   You'd have the right to take the stand and testify, subject

23   yourself to cross-examination by the US Attorney but you would

24   also have the right to go to trial and remain silent, and if you

25   elected to proceed in that fashion, nobody could say anything

10

1    negative about your silence in front of the jury.  It is after

2    all a constitutional right; understand?

3             THE DEFENDANT:  I understand.

4             THE COURT:  Do you understand that if you plead guilty

5    and I decide to accept your plea, you will have waived, that is,

6    given up all the rights associated with a trial by jury.  In

7    fact, there will be no trial of any kind.  Essentially what will

8    remain of your case is the sentencing phase; understand?

9             THE DEFENDANT:  I understand.

10            THE COURT:  Any questions about the waiver of those

11   rights?

12            THE DEFENDANT:  No, Your Honor.

13            THE COURT:  Well, have you and Ms. Holsey had the

14   opportunity to talk about the facts and the law as they pertain

15   to your case?

16            THE DEFENDANT:  Yes, Your Honor.

17            THE COURT:  Has she covered with you the indictment that

18   was filed?

19            THE DEFENDANT:  Yes, Your Honor.

20            THE COURT:  Has she gone over with you the plea

21   agreement that you're proposing?

22            THE DEFENDANT:  Yes, Your Honor.

23            THE COURT:  Has she spoken to you at least in general

24   terms about the sentencing guidelines?

25            THE DEFENDANT:  Yes, Your Honor.

1        THE COURT:  Are you satisfied with her representation?

2        THE DEFENDANT:  Yes, Your Honor.

3        THE COURT:  Do you have any complaints about it?

4        THE DEFENDANT:  None, Your Honor.

5        THE COURT:  Although I understand that you and Ms.

6    Holsey have gone over the indictment together, it is my

7    obligation to cover it with you as a part of this proceeding.

8    As I said at the outset, it's a multi-count multi-defendant

9    federal felony criminal indictment.

10        You are named in multiple counts but it's my

11   understanding you're here offering to plead guilty only to Count

12   1 so we will start there.

13        Count 1, which is, as I say, the count that I understand

14   you're offering to plead guilty to, alleges conspiracy to commit

15   mail fraud in violation of 18 USC Section 1349.

16        The indictment itself begins with some general

17   provisions that allege that you were a US citizen who filed

18   fraudulent petitions to bring foreign workers into the United

19   States under the H-2A visa program.

20        It goes on to set forth the role that the Government

21   alleges all of the other defendants took.

22        Count 1 itself alleges that beginning at least in 2015

23   and continuing up through the return of the indictment in

24   Atkinson, Bacon, Coffee, Tattnall, Toombs and Ware counties

25   within the Southern District of Georgia and elsewhere, you and

12

1   the other defendants are accused of knowingly and willfully

2   conspiring to commit mail fraud, that is, to execute and attempt

3   to execute a scheme, an artifice to defraud and to obtain money

4   by means of materially false and fraudulent pretenses,

5   representations and promises by using the US mail for the

6   purposes of executing such a scheme, all done it alleges in

7   violation of Title 18 USC Section 1341.

8          Count 1 of the indictment sets forth the object of the

9   conspiracy, which it alleges was to make money from illegal

10  activities including mailing fraudulent petitions seeking

11  non-immigrant H-2A visas for foreign workers, financially

12  exploiting the foreign workers through forced labor and then

13  hiding the illegal proceeds through money laundering.

14         The indictment goes on to set forth many of the manner

15  and means of the conspiracy it alleges, and then it goes on to

16  set forth several of the overt acts that the indictment alleges

17  were taken, including but not limited to many that it alleges

18  you undertook.

19         In addition to allegations with regard to your specific

20  activities, it alleges that or included in that is an allegation

21  that you confiscated ID's from immigrants, that you forced them

22  to live in very small confined area with little or no food and

23  limited plumbing and without safe drinking or cooking water,

24  that you did not allow proper water breaks, that you forced

25  people to live in very hot conditions without air-conditioning,

13

1   that you didn't pay them appropriately and so forth, all done it

2   alleges in violation of 18 USC Section 1349 and 2.

3        Counts 2 through 3 of the indictment to which you're not

4   offering to plead guilty each allege separate mail fraud counts

5   in violation of 18 USC Section 1341.

6        Count 8 of the indictment, to which you're not offering

7   to plead guilty, alleges conspiracy to engage in forced labor in

8   violation of 18 USC Section 1594.

9        And Count 53 of the indictment, to which you're not

10  offering to plead guilty, alleges money laundering conspiracy in

11  violation of 18 USC Section 1956.

12       And my question to you after all of that is simply:  Do

13  you understand that's what's set forth against you in the

14  indictment?

15       THE DEFENDANT:  Yes, Your Honor.

16       THE COURT:  I will point out that the indictment does

17  contain an asset forfeiture allegation.  Mr. Gilluly, is the

18  Government going forward with regard to that criminal

19  forfeiture?

20       MR. GILLULY:  Yes, Your Honor.

21       THE COURT:  Through that provision, the Government

22  requests from certain defendants, including you, proceeds that

23  were obtained or attempted to be obtained through the crimes

24  that are alleged.

25       Now, in order to convict you of that one count to which

14

1  you're offering to plead guilty, Count 1, the Government would

2  have to prove beyond a reasonable doubt what are called the

3  essential elements of that offense and the essential elements of

4  that particular offense, conspiracy to commit mail fraud, are

5  two-fold, so the Government would have to prove beyond a

6  reasonable doubt these two things:  First, that two or more

7  people in some way agreed to try to accomplish a common and

8  unlawful plan to commit mail fraud as charged in the indictment;

9  and second, that you knew the unlawful purpose of the plan and

10  willfully joined in it.

11         Do you understand those are the essential elements of

12  that offense?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  Do you understand that by pleading guilty

15  you admit that they are satisfied?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  Now, the maximum possible penalty that I

18  could ever impose for that offense, Count 1, is imprisonment for

19  not more than 20 years, a fine of not more than $250,000.00, a

20  term of supervised release of not more than three years, a

21  $100.00 special assessment and restitution could be ordered to

22  any victims that are identified.

23         Do you understand those are the maximum possible

24  penalties that I could impose?

25         THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Any questions about that?

2          THE DEFENDANT:  No, Your Honor.

3          THE COURT:  A few followup concepts regarding

4    punishment.  That phrase "supervised release" means after any

5    period of federal incarceration, once you're released from

6    prison, then you will have to follow the rules that I set forth

7    for a given number of months.  Those rules may include but not

8    be limited to a requirement that you get a job, that you not

9    violate any law.  You might be subject to comply with certain

10   restitution payments.  You could be required to inform the

11   Government of your financial picture.

12         And failure to live up to the terms of supervised

13   release could wind you back up in prison; understand?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  Also want you to be familiar at least in

16   general terms with those federal sentencing guidelines I

17   mentioned earlier.  They are not mandatory.  They are advisory

18   but it's still my duty to calculate what the advisory guideline

19   range is going to be in your case and to consider that range

20   along with possible departures under the guidelines and then to

21   consider all the sentencing factors that are set forth in our

22   federal sentencing statute, 18 USC Section 3553.

23         Once I consider all those things, it's going to result

24   in me imposing a punishment on you that's either within that

25   advisory guideline range -- it could be above it; it could be

16

 1    below it.

 2          Now some of the major factors that go into figuring all

 3    that out are your role in the offense, what it was you did, your

 4    criminal history or lack thereof and whether you came here and

 5    told the truth and accepted responsibility for your actions.

 6          Those are some of the major factors that go into it.

 7    There's others.  Do you understand all of that?

 8          THE DEFENDANT:  Yes, Your Honor.

 9          THE COURT:  Do you have any questions about any of it?

10          THE DEFENDANT:  No, Your Honor.

11          THE COURT:  Has anybody promised you an exact sentence?

12          THE DEFENDANT:  No, Your Honor.

13          THE COURT:  That's good.  At this point, all they can do

14    is give you their best guess and their guess wouldn't be binding

15    on me as your sentencing judge; understand?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Well, in representing you, Ms. Holsey has

18    apparently negotiated with the US Attorney's Office trying to

19    reach a plea agreement in your case.  Did she have your

20    permission to do that?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  We will take that agreement up.  Mr.

23    Gilluly, if you will stand and summarize its provisions.

24          MR. GILLULY:  Yes, Your Honor.

25          The plea agreement itself is a document that is 11 pages

1  in length.  It's signed by the parties on Page 11, and there is

2  an attachment that outlines some of the items that will be

3  forfeited as well, but the material provisions by way of summary

4  of this plea agreement are as follows.

5      This defendant does agree to plead guilty to Count 1 of

6  the indictment, and at sentencing the Government will move to

7  dismiss the remaining counts pending against this defendant.

8      If The Court determines that the defendant qualifies for

9  adjustments under Sentencing Guideline 3E1.1(a) and the offense

10  level prior to that adjustment is 16 or greater, the Government

11  will move for an additional one-level reduction in the offense

12  level as acceptance of responsibility.

13      The defendant does agree to pay restitution for the full

14  loss caused by the defendant's criminal conduct, which is not

15  limited to the specific counts to which the defendant is

16  pleading guilty.  The defendant does agree to the forfeitures

17  outlined in the plea agreement.

18      Additionally the defendant agrees that she will be

19  debarred from receiving temporary labor certification from the

20  Department of Labor under the H-2A program for a period of three

21  years as outlined in the plea agreement.

22      The defendant does waive all rights concerning appeal

23  provisions applicable to the debarment, disqualification from

24  filing any H-2A labor certification applications.

25      The defendant does agree to provide full, complete,

18

1    candid and truthful cooperation to the Government.  The

2    Government in its sole discretion will decide whether that

3    cooperation qualifies as substantial assistance that warrants

4    the filing of a motion for downward departure or any reduction

5    in sentence.

6           Based on the defendant's substantial assistance, the

7    Government will agree to recommend a sentence of 12 months and

8    one day of imprisonment.

9           The defendant does waive her rights to appeal on any

10   ground with only three exceptions that are further outlined in

11   the plea agreement.

12          The defendant does waive the right to collaterally

13   attack the defendant's conviction and sentence on any ground and

14   by any method.

15          There is a limited exception regarding attacks regarding

16   allegations of ineffective assistance of counsel.

17          The defendant does waive all rights to request

18   information about the investigation and the prosecution of the

19   defendant's case under the Freedom of Information Act and the

20   Privacy Act and waives the protections of Rule 11(f) of the

21   Federal Rules of Criminal Procedure and Rule 410 of the Federal

22   Rules of Evidence.

23          If the defendant fails to plead guilty or later

24   withdraws the guilty plea, statements made by the defendant in

25   connection with the plea and any leads derived therefrom shall

1  be admissible for any and all purposes.

2          Those are the material provisions of the plea agreement.

3  Your Honor, it's signed by myself and Ms. Groover on Page 11 of

4  this document representing the United States.  With The Court's

5  permission, may I approach the lectern and verify the

6  defendant's signature?

7          THE COURT:  Yes.

8          MR. GILLULY:  Thank you.

9          I'm now at the lectern and I have before me the plea

10  agreement, and I'm turning to Page 11 of the document, and if

11  you can see here, there's a signature.  It's the third down,

12  third after the first full paragraph on this.  Is that your

13  signature, Ms. Patricio?

14          THE DEFENDANT:  Yes, it is.

15          MR. GILLULY:  Underneath your client's signature, Ms.

16  Holsey, is that your signature?

17          MS. HOLSEY:  It is.

18          THE COURT:  All right, thank you.

19          MR. GILLULY:  Your Honor, I've verified the signatures.

20  I have the plea agreement along with the proposed order.  May I

21  submit it to The Court?

22          THE COURT:  Yes, thank you.

23          So Ms. Holsey, is that summary consistent with the

24  agreement you negotiated?

25          MS. HOLSEY:  It is, Your Honor.

1      THE COURT:  And Ms. Patricio, is that summary consistent

2  with the agreement that you signed?

3      THE DEFENDANT:  Yes, Your Honor.

4      THE COURT:  Did you read it before you signed it?

5      THE DEFENDANT:  Yes, Your Honor.

6      THE COURT:  Other than the provisions contained in that

7  plea agreement, has anybody made you any promises regarding the

8  outcome of your case?

9      THE DEFENDANT:  No, Your Honor.

10      THE COURT:  I do want to pick back up on a few of the

11  points that Mr. Gilluly made.  First, there are certain appeal

12  waivers in the agreement you're proposing.  You waive certain

13  direct appeal rights.  It says, "Defendant entirely waives her

14  right to a direct appeal of her conviction and sentence on any

15  ground."

16      Now, there are three exceptions to that waiver.  That

17  means if but only if one of these three things were to occur

18  would you get a direct appeal right pursuant to this agreement.

19      Number 1, if I were to sentence you above the statutory

20  maximum, you could appeal that directly; Number 2, if I were to

21  sentence you above the advisory guideline range as found by me,

22  you could appeal that directly; or Number 3, if the Government

23  were to file a direct appeal, then you could file one as well.

24  Otherwise, pursuant to this plea agreement, you waive all other

25  direct appeal rights; understand?

21

1        THE DEFENDANT:  Yes, Your Honor.

2        THE COURT:  Any questions about that waiver?

3        THE DEFENDANT:  No, Your Honor.

4        THE COURT:  Also included in the agreement is a waiver

5   of certain collateral attack rights.  It states, "Defendant

6   entirely waives her right to collaterally attack her conviction

7   and sentence on any ground and by any method including but not

8   limited to a 28 USC Section 2255 motion."

9        There is one exception to that waiver contained in the

10  agreement, and that is pursuant to this agreement, you retain

11  the right to collaterally attack based on a claim of ineffective

12  assistance of counsel.

13       Otherwise, pursuant to this plea agreement, you waive

14  all other collateral attack rights; understand?

15       THE DEFENDANT:  Yes, Your Honor.

16       THE COURT:  Any questions about that waiver?

17       THE DEFENDANT:  No, Your Honor.

18       THE COURT:  Well, Ms. Holsey, as an officer of The

19  Court, are you aware of any impropriety on the part of the

20  Government in handling Ms. Patricio's case?

21       MS. HOLSEY:  No, I'm not, Your Honor.

22       THE COURT:  Mr. Gilluly, are you aware of any

23  impropriety on anyone's part in handling this case?

24       MR. GILLULY:  No, Your Honor.

25       THE COURT:  Well, Ms. Patricio, do you still want to

22

1    plead guilty to Count 1?

2            THE DEFENDANT:  Yes, Your Honor.

3            THE COURT:  Do you want to plead guilty to Count 1

4    because you are, in fact, guilty of it?

5            THE DEFENDANT:  Yes, Your Honor.

6            THE COURT:  Do you understand the rights and the

7    privileges that you waive or give up if I accept your plea?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  Let the record reflect that Ms. Maria

10   Patricio is 63 years old.  She's married and has four children.

11   She was born in Brownsville, Texas and lives in Nicholls,

12   Georgia.  She received her GED, went on to obtain some college.

13           She has worked in many capacities including a department

14   store, as a manager in a doctor's office and the fields.  She's

15   worked with the school board and a plant nursery and then later

16   with her own H-2A company.

17           She's not laboring under any disabilities, doesn't

18   currently take any medications.  She is not under the influence

19   of any drugs or alcohol.  It's obvious she's in full possession

20   of her faculties.  She's participated intelligently today and

21   had the services of an excellent defense lawyer who has gone

22   over all the requisite concepts and pleadings with her.

23           In short, I find that Ms. Patricio's offer to plead

24   guilty to Count 1 is knowing.  I also find that it's voluntary;

25   is that right, Ms. Patricio?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Therefore, I will accept the plea agreement.

3   Let me call on Mr. Gilluly for a factual basis and you two may

4   have a seat while he does so.

5          MR. GILLULY:  Like to call Special Agent Siegenthaler to

6   the stand.

7                   SPECIAL AGENT JOHN SIEGENTHALER,

8   having been first duly sworn, was examined and testified as

9   follows:

10         THE CLERK:  Thank you.  You may be seated.  And if you

11  will please state your full name, spell your last, state your

12  occupation and your business address.

13         THE WITNESS:  John Siegenthaler,

14  S-i-e-g-e-n-t-h-a-l-e-r.  I'm a special agent with the US

15  Department of State.  I've been employed so since 2010.  My

16  capacity is I investigate visa fraud and human smuggling and

17  human trafficking.

18                            EXAMINATION

19  BY MR. GILLULY:

20  Q.   And, Special Agent, are you one of the lead agents in the

21  investigation in the case of United States versus Maria

22  Patricio, who is present in the courtroom today?

23  A.   I am.

24  Q.   And as lead agent, you actually participated in this

25  international investigation; is that correct?

24

1  A.    I did.

2  Q.    And you likewise participated in interviews of a number of

3  witnesses including victims?

4  A.    I did.

5  Q.    And you were part of a team.  This team also includes

6  agents from Homeland Security Investigations, the FBI, the

7  United States Postal Office of Inspector General and as well as

8  other organizations; correct?

9  A.    It does, yes.

10  Q.    And in this investigation, agents used a number of

11  investigative techniques, conducted dozens of search warrants,

12  reviewed physical and electronic evidence, interviewed hundreds

13  of witnesses, including over 200 victims, conducted

14  surveillance, used confidential informants and even participated

15  in wiretaps; is that correct?

16  A.    Yes.

17  Q.    Including a wiretap of this defendant's phone?

18  A.    Yes.

19  Q.    And did your investigation overall reveal that beginning

20  at a time unknown but at least from 2015 through the return of

21  the indictment, which was October of 2021, in the Southern

22  District of Georgia and elsewhere, including other countries,

23  that there was an ongoing conspiracy to commit mail fraud by

24  mailing fraudulent H-2A petitions seeking migrant workers to

25  come into the US under the pretext of lawfully working in the

25

1   agricultural business?

2   A.   Yes.

3   Q.   And ultimately in violation of Title 18 United States Code

4   Section 1349?

5   A.   Yes.

6   Q.   Did your investigation indicate that there were material

7   representations, misrepresentations in the petition, and based

8   on these material misrepresentations, the United States

9   Government approved petitions thereby allowing tens of thousands

10  of foreign nationals to come into the United States?

11  A.   Yes.

12  Q.   The Government approved the petitions under the belief

13  that workers would be working in accordance with the H-2A visa

14  program?

15  A.   That's correct.

16  Q.   And, in fact, and as the investigation revealed, the

17  workers were exploited by the members of the conspiracy?

18  A.   Yes.

19  Q.   The defendant was a member of this conspiracy and served

20  in a critical role; is that correct?

21  A.   Yes.

22  Q.   And this investigation revealed among other things that

23  Ms. Patricio prepared false petitions for others to bring in

24  H-2A workers?

25  A.   Yes.

26

1    Q.    That this defendant mailed false petitions for H-2A

2    workers?

3    A.    Yes.

4    Q.    Filed false petitions for even illegal aliens, people who

5    couldn't legally have submitted petitions?

6    A.    That's correct.

7    Q.    Also knew that farm labor contractors would use fake

8    payroll records because the farm labor contractors were not

9    charging the workers in accordance with the petition

10   requirements?

11   A.    That's correct.

12   Q.    Additionally, this defendant received significant money

13   from her role in this conspiracy?

14   A.    Yes.

15   Q.    More specifically, the H-2A program, by way of summary,

16   you're familiar with the program?

17   A.    Yes.

18   Q.    And, in fact, foreign nationals can't work in the United

19   States without prior authorization from the United States

20   Government; is that correct?

21   A.    That's correct.

22   Q.    And one way for foreign nationals to work in the

23   agricultural field is through an H-2A visa; is that right?

24   A.    That's correct.

25   Q.    And under that program, essentially farmers who can't find

27

1  United States citizens to work on farms can seek assistance from

2  the Government and ultimately hire foreign nationals under the

3  H-2A program; is that correct?

4  A.    Yes.

5  Q.    However, petitions must be prepared and submitted to the

6  Government and those petitions are packets, and in those

7  packets, whoever prepared the packets under penalty of perjury

8  must indicate how many workers are needed at the particular

9  location?

10  A.    Yes.

11  Q.    And this petition outlines where these workers will be

12  housed?

13  A.    Yes.

14  Q.    Where these workers will be working?

15  A.    Yes.

16  Q.    How much they will be paid?

17  A.    Yes.

18  Q.    How long they will be working in the United States under

19  the program?

20  A.    Yes.

21  Q.    That they will be returned to their country of origin?

22  A.    Yes.

23  Q.    That they won't be charged certain fees for even applying

24  to work under the H-2A?

25  A.    Or reimbursed, yes.

28

```
 1   Q.    Pardon me?
 2   A.    Or reimbursed for those fees, yes.
 3   Q.    Correct.  And they are supposed to be paid lawful wages
 4   under the United States?
 5   A.    Yes.
 6   Q.    They are supposed to work lawful hours in the United
 7   States?
 8   A.    Yes.
 9   Q.    And housed at approved locations?
10   A.    Yes.
11   Q.    And they are not supposed to be traded with other farms to
12   work in places that aren't in the petition?
13   A.    Yes.
14   Q.    And there are other requirements that the person who
15   prepares the petitions signs under penalty of perjury that the
16   petition will be followed if these workers are brought in under
17   the petition; the contracts will be accurate and people will be
18   treated appropriately as outlined in the petition?
19   A.    Yes.
20   Q.    Did this investigation reveal that during the
21   aforementioned timeframe that the organization mailed dozens of
22   the false petitions to the United States Government seeking over
23   71,000 foreign workers to enter the United States to work for
24   agricultural employers?
25   A.    It did.
```

1    Q.    And fraudulently caused the United States to issues tens

2    of thousands of H-2A visas to foreign nationals?

3    A.    Yes.

4    Q.    And did the investigation reveal that this was done and

5    people, in fact, were gravely exploited for financial gain?

6    A.    Yes.

7    Q.    Did the organization exploit these workers by demanding

8    that they pay unlawful fees to even participate in the program?

9    A.    Yes.

10   Q.    And at times, would conspirators withhold identification

11   documents in order to maintain control over these migrant

12   workers?

13   A.    Yes.

14   Q.    Did the investigation reveal the conspirators would often

15   require workers to perform physically demanding work for little

16   or even no pay?

17   A.    Yes.

18   Q.    And not pursuant to the terms of the petitions or the

19   contracts that they believed they would be working under?

20   A.    That's correct.

21   Q.    Did the conspiracy also indicate that people often were

22   forced to live in crowded and even unsanitary and degrading

23   living conditions?

24   A.    Yes.

25   Q.    And some people were threatened with deportation and

30

1   violence?

2   A.    Yes.

3   Q.    And based on this entire investigation, there was a

4   conservative estimate that indicates that this entire

5   organization profited over 200 million dollars from the scheme?

6   A.    That's correct.

7   Q.    And there was also bulk cash smuggling into the United

8   States?

9   A.    Yes.

10  Q.    Did the organization also purchase vehicles, land, houses

11  and even a bar with cash made from the exploitation of those

12  migrants?

13  A.    Yes.

14  Q.    And there was also significant money laundering.  I

15  believe investigators identified over 20 million dollars

16  laundered through casinos?

17  A.    That's correct.

18  Q.    And ultimately did agents and investigators with the

19  Department of Labor, Homeland Security and Department of State

20  review documents and petitions submitted by Defendant Maria

21  Patricio on behalf of co-defendants Nery Rene Carrillo-Najarro,

22  Antonio Chavez Ramos, Enrique Duque Tovar, Charles King, Stanley

23  McGauley, Luis Alberto Martinez and Gumara Canela, among others?

24  A.    Yes.

25  Q.    And Maria Patricio, for instance, prepared and mailed

1  false Petition WACI913750688 seeking 316 workers; is that

2  correct?

3  A.    Yes.

4  Q.    And the US, relying on the petition, issued H-2A visas for

5  hundreds of foreign nationals, including Victims 55, 56, 57 and

6  65?

7  A.    Yes.

8  Q.    Ultimately those victims were interviewed?

9  A.    Yes.

10  Q.    By law enforcement?

11  A.    Yes.

12  Q.    They were not paid in accordance with the petition?

13  A.    They were not.

14  Q.    They did not work at approved locations?

15  A.    Yes.

16  Q.    And the investigation revealed that even Victim 65 died

17  while working at an unapproved location in a field?

18  A.    Yes.

19  Q.    Maria Patricio also prepared and mailed false Petitions

20  WAC2009450945 and WAC2015150421; is that correct?

21  A.    Yes.

22  Q.    And, for instance, the petition ending in 0945 sought 49

23  workers to come into the United States and that petition was

24  fraudulent?

25  A.    Yes.

32

1    Q.    The United States Government issued H-2A visas for dozens

2    of workers including Victims 1, 3, 4 and 5?

3    A.    Yes.

4    Q.    Coconspirators unlawfully charged the workers fees,

5    confiscated identification documents to prevent them from

6    leaving and also housed them at unapproved locations?

7    A.    Yes.

8    Q.    And worked them at unapproved locations?

9    A.    Yes.

10   Q.    And didn't pay them in accordance with the petition?

11   A.    Correct.

12   Q.    And, in fact, after interviewing these witnesses, we

13   learned the victims were even, in fact, housed at a trailer

14   where there was limited plumbing and the water wasn't even safe

15   to drink?

16   A.    Yes.

17   Q.    Ms. Patricio also prepared and mailed false Petition

18   WAC2015450679 that sought 99 workers to come through the H-2A

19   visa program; is that correct?

20   A.    That's correct.

21   Q.    And the US, based on the material misrepresentations,

22   issued H-2A visas for dozens of workers, including Victim 62?

23   A.    Yes.

24   Q.    Coconspirators charged illegal fees, didn't allow proper

25   water breaks, and again this victim was forced to live in a

33

1    hazardous trailer; is that correct?

2    A.    Yes.

3    Q.    Maria Patricio prepared and mailed several other false

4    petitions that are outlined in the indictment; is that correct?

5    A.    That is correct.

6    Q.    And as a result, the United States issued H-2A visas for

7    hundreds of workers, including Victims 15 through 17, 20 through

8    50, 63 and 64 and 66; is that right?

9    A.    That's correct.

10   Q.    And, again, all of these numbered victims we know their

11   identities?

12   A.    That's correct.

13   Q.    And we've actually interviewed, gosh, over 200 that were

14   rescued; is that correct?

15   A.    That's correct.

16   Q.    Including these numbered victims here in this indictment?

17   A.    That's correct.

18   Q.    And investigators also, in addition to interviewing

19   victims, interviewed cooperating defendants who implicated Ms.

20   Patricio as being a member of the mail fraud conspiracy; is that

21   correct?

22   A.    That's correct.

23   Q.    And additionally investigators reviewed many bank

24   accounts, including bank accounts belonging to Ms. Patricio,

25   including SunTrust accounts, Wells-Fargo accounts and Colony

34

1    Bank accounts; is that right?

2    A.    That's correct.

3    Q.    Between 2016 and 2020, the SunTrust Bank account records

4    show at least 150,000-plus dollars in deposits and withdrawals,

5    and they were in amounts consistent with payments for her

6    preparing petitions?

7    A.    That's correct.

8    Q.    Additionally, the Wells-Fargo accounts showed over

9    400,000.00 in deposits and withdrawals between 2014 and 2020

10   consistent with payments for petitions that she prepared?

11   A.    That's correct.

12   Q.    Colony Bank account showed over million dollars, or

13   approximately a million dollars in deposits and withdrawals

14   between 2014 and 2020, again consistent with payments for

15   preparing these fraudulent petitions?

16   A.    That's correct.

17   Q.    Tax records were reviewed by agents and shows no money was

18   reported regarding these petitions that were filed?

19   A.    That's correct.

20   Q.    And additionally investigators looked at various records

21   from casinos that were provided and demonstrated that Ms.

22   Patricio often I guess gambled or used illegal proceeds at the

23   casinos and cashed them out; is that correct?

24   A.    Yes.

25   Q.    Among others?

35

1    A.    Yes.

2    Q.    Did the investigation overall reveal that Ms. Patricio

3    played a critical and integral part of the conspiracy by

4    preparing and filing these petitions that tricked the United

5    States into granting H-2A visas for workers that were then

6    exploited in horrendous ways by other members of the conspiracy?

7    A.    Yes.

8          MR. GILLULY:  That's all the questions I have, Your

9    Honor.

10         THE COURT:  Ms. Holsey, cross-examination.

11                         EXAMINATION

12   BY MS. HOLSEY:

13   Q.    Thank you, Your Honor.  Now, did you-all find any personal

14   identification document of any of the numbered victims at Ms.

15   Patricio's home?

16   A.    Not -- not to my knowledge, no.

17   Q.    And there is no evidence, there is no evidence that Ms.

18   Patricio made any threats to anyone; correct?

19   A.    There is no evidence of that, no.

20   Q.    And there's also no evidence that Ms. Patricio directed

21   farmers to move workers from one farm to another; correct?

22   A.    No, to my knowledge, no.

23   Q.    And there's also no evidence that Ms. Patricio was the

24   person who set and scheduled any water breaks that did or didn't

25   occur in those farms; correct?

36

1    A.    She did not.

2          MS. HOLSEY:  Thank you.  That's all I have, Your Honor.

3          THE COURT:  Any brief redirect?

4          MR. GILLULY:  No, Your Honor.

5          THE COURT:  You may step down.  Thank you.

6          Ms. Holsey, Ms. Patricio, reapproach.

7          Ms. Patricio, do you dispute any of the testimony given

8    by the special agent in your case this morning?

9          THE DEFENDANT:  No, Your Honor.

10          THE COURT:  Do you admit the truth of his testimony?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Based on the record made at this proceeding

13    I'm satisfied there's a factual basis for a plea of guilty to

14    Count 1.  Let it be entered.

15          THE CLERK:  The plea of guilty has been entered, Your

16    Honor.

17          THE COURT:  The plea of guilty is accepted and I now

18    adjudge you guilty of Count 1 of the indictment.  The probation

19    office will prepare a presentence report and they will disclose

20    that report to the Defense and to the Government and will

21    thereafter schedule your sentencing hearing.

22          Let me hear from all concerned regarding Ms. Patricio

23    going forward beginning with Probation.

24          PROBATION OFFICER RENFROE:  Your Honor, Ms. Patricio has

25    been on bond for a little over two and a half years.  She's

1   committed no violations.  Based on her conduct, we would

2   recommend that she be allowed to continue on bond.

3          THE COURT:  Mr. Gilluly, on behalf of the United States?

4          MR. GILLULY:  We have no objection to that request.

5          THE COURT:  Ms. Holsey, I assume that would be your

6   request.

7          MS. HOLSEY:  Yes, Your Honor.

8          THE COURT:  Ms. Patricio, just to be clear, what we're

9   talking about is what happens to you right now.  What happens to

10  many people is I have them remanded to the custody of the US

11  Marshal, but because you have complied with all the terms of

12  your bond, I'm going to continue those terms pending sentencing.

13         It may go without saying but it's so important I need to

14  say it to you directly.  The worst thing you could do at this

15  point is to violate the terms of your bond.

16         It would result not only in me having the marshal come

17  get you immediately, but you would stand to lose the very

18  benefit of the timely plea that you've just entered; do you

19  understand?

20         THE DEFENDANT:  I understand, Your Honor.

21         THE COURT:  With that, we will continue the terms of

22  bond, and Ms. Holsey and Ms. Patricio, you may be excused and we

23  will take a brief ten-minute recess until our next hearing which

24  is scheduled at 10:45.

25         (Proceeding concluded at 10:36 a.m.)

38

```
1                        CERTIFICATION

2

3        I certify that the foregoing is a true and correct

4   transcript of the stenographic record of the above-mentioned

5   matter.

6

7

9   _____     12/26/2024

10  Debra Gilbert, Court Reporter        Date

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```